UNITED STATES of America, Plaintiff,

v.

Miguel A. RIVERA RODRIGUEZ, Defendant.

Crim. No. 90–258(JP).

United States District Court, D. Puerto Rico.

June 19, 1991.

Edwin Vázquez, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Jorge Castro, Santurce, P.R., for defendant.

OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the defendant's Opposition to the Magistrate's Report and Recommendation which recommends that the defendant's Motion to Suppress be denied. After a thorough review of the record in this case, we decline to adopt the Report and Recommendation, and grant defendant's motion to suppress.

Defendant's objections to the Report and Recommendation are based on alleged inconsistencies between Agent Fernando Leiva Acosta's [1] testimony at the Suppression Hearing and the Sworn Statement which was the basis of the search warrant. Also, the defendant points out that the search warrant contained several mistakes (including the designation of a non-existent apartment 3–A) which, during the Suppression Hearing, Agent Leiva attempted to attribute to typographical errors. Defendant argues in essence that the description in the search warrant was insufficient to locate and identify the premises to be searched, and that there was a reasonable probability that another premise might be mistakenly searched because of the confusing identification of the apartment to be searched. Defendant further claims that the inconsistencies between the testimony of agent Leiva and the Sworn Statement he submitted in order to obtain the search warrant prove that the affidavit was not truthful, thus making the search warrant invalid.

We incorporate the Magistrate's summary of the facts in this case, *see* Docket Entry # 30 at 2–4, and only address those facts relevant to the defendant's objections to the Report and Recommendation.

## A.  AGENT'S ENTRY INTO DEFENDANT'S APARTMENT BUILDING PRIOR TO EXECUTION OF THE SEARCH WARRANT

The defendant has objected to the Magistrate's statement that Agent Leiva did not follow the defendant inside the building and up to the door of the apartment when he made the original surveillance of the defendant on December 5, and 6, 1988. This surveillance was part of the facts which were stated in the affidavit which formed the basis of and was incorporated into the search warrant. In the Report and Recommendation, the Magistrate asserts that "[d]uring the surveillance, Agent Lebya [sic] followed the suspect to building number 176 located on Pérez Street ... and saw the suspect enter what he thought was apartment 4A of said building. *Agent Leyba [sic] did not follow the suspect inside the building and up to the door of the apartment.  From where Agent Leyba stood outside,* he saw the suspect open said apartment door's outer white grill gate ... next, open the door; and then step inside the apartment." Report and Recommendation at 2 (emphasis added).  The defendant claims, and we agree, that the agent did follow the defendant inside the building. As stated in the Sworn Statement of the agent, on December 6, 1988, after Leiva had followed the defendant to Pérez Street, the defendant "went up into the building previously mentioned [176 Pérez Street] to Apartment 4–A, up to where the agent followed him ... and was able to observe that he [the defendant] opened the gate and the door of the apartment and entered the same." [2]  (Translation ours.)  Agent Leiva stated that when he entered the apartment building, following the defendant, Suppression Tr. II, at 14–15, the apartment was labeled 4–A, with a piece of paper which was attached to the door. Also, Agent Leiva testified that while conducting surveillance,[3] he went up to the

1.  Although the Magistrate and the defendant refer to this agent as "Leyba", the search warrant at issue in this case states the agent's names as "Agte. Fernando Leiva Acosta."

2.  We note that the defendant has not provided the Court with a Certified translation of the Sworn Statement, as Ordered by this Court, Docket Entry # 33.

3.  The evidence in the record reveals that the "4A" paper was seen by Agent Leiva on the day of the surveillance rather than the day the actual search was executed. Suppression Hearing, Vol. II Tr. 14–15. However, in the Report and Recommendation, the Magistrate states that when Agent Leiva *began to search* the apart-

ment, he saw there was a paper posted to the hallway door which read "4A." Report and Recommendation at 3.  We disagree with this factual statement in the Magistrate's Report and Recommendation, noting that if the agent had seen the note on the day the search was executed rather than the day of the surveillance, this evidence would be irrelevant to the validity of the search warrant when issued because "[t]hose items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued." *Maryland v. Garrison,* 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81 (1987).

apartment to verify the numbers, and that the apartment was labeled 4–A, with a piece of paper which was attached to the door. Thus, we reject the portion of the Report and Recommendation which concludes that the agent did not follow the defendant *into the building* on December 6, 1988, one of the days the agent conducted surveillance on the defendant and gathered the information forming the sworn statement which was incorporated into the search warrant. Therefore, we agree with the defendant that the identification of the apartment was made from the inside of the building, as stated in the agent's testimony and the sworn statement.

### B. PARTICULARITY OF DESCRIPTION IN WARRANT

Defendant further objects that the description in the Sworn Statement of the apartment to be searched contained several mistakes, which made it impossible for the officers executing the warrant to locate and properly identify the premises to be searched, and made it reasonably probable that another premise might be mistakenly searched because of the confusing identification of the apartment. After carefully considering the record in this case, we agree with the defendant's argument and conclude that the warrant did not satisfy the particularity requirements of the Fourth Amendment.

■ The Warrant Clause of the Fourth Amendment proscribes the issuance of any warrant except one "particularly describing the place to be searched, and the persons or things to be seized." The purpose of this requirement is to limit the authorization to search to the specific areas and items for which there is probable cause to search, so that the search will be carefully confined and will not become the type of broad exploratory search which the Framers of the Constitution intended to prohibit. *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). As the Magistrate has pointed out in the Report and Recommendation, the test to determine the adequacy of the description of the location to be searched in a search warrant is 1) whether the description is sufficient to enable the executing officer to locate and identify premises with reasonable effort; and 2) whether there is any reasonable probability that another premise might be searched. *United States v. Bonner,* 808 F.2d 864 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). Moreover, affidavits and search warrants should be interpreted in a common sense manner, and hypertechnical readings of the warrant should be avoided. *United States v. Hinds,* 856 F.2d 438, 441 (1st Cir.1988); *United States v. Haydel,* 649 F.2d 1152, 1157 (1st Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982). The warrant is sufficient "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *United States v. Steele,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925). *See also Hinds,* 856 F.2d at 442.

■ However, a search warrant for an apartment house or hotel or other multiple occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately. *United States v. Higgins,* 428 F.2d 232 (7th Cir. 1970). *See also* 1 W. LaFave & J. Israel, *Criminal Procedure,* § 3.4, at 225 (1984). This requirement ensures compliance with the proscription of the Fourth Amendment.

■ In the instant case, the search warrant describes the apartment to be searched as follows:

"... [a]partment ... 4–A, located on the 4th floor of building 176, which has a white grill-iron gate ["rejas"] with double locks and doors with natural design. To the front Apartment 4–B with a grill-iron gate ["rejas"] and double locks and doors with natural design, on the left side apartment 3–A with an grill-iron gate with double locks and doors with natural design...."

Docket Entry #19 Exhibit A (translation ours).

The defendant argues that two errors contained in the search warrant are sufficiently confusing so that the warrant does not adequately describe the place to be searched and ensure that another apartment would not be searched, thus invalidating the warrant. The first error identified by the defendant is that apartment 3–A does not exist. The defendant also points out that the apartment to be searched, apartment 4–A, was not defendant's apartment, which is 4B(2). We agree with the defendant that these errors as well as the description of the place to be searched, which inaccurately describes the layout of the fourth floor of the building, are sufficient to invalidate this warrant.

As stated in the Magistrate's Report and Recommendation, once inside the building, and up the staircase to the fourth floor of the building, the defendant's apartment is on the left hand side, and in a hallway which is behind a white grill gate ("rejas"). Behind the same white grill gate is a door which leads to the hallway where there are two apartments, one of which is defendant's. According to the Magistrate, neither of the two inner apartments in the hallway has an outer gate. The Magistrate goes on to state that the warrant described the apartment to be searched as directly behind the white grill gate, which in actuality turned out to be the door to the hallway where the defendant's apartment was found. In the Report and Recommendation, the Magistrate also claims that "[t]he warrant states that the apartment facing the hallway door with the white grill gate, also has it own front gate, but does not state the color of the gate."

We disagree with this reading of the warrant. As we stated above, the warrant describes the apartment as located on the fourth floor of building 176, which has "rejas" with double locks and doors with natural design. In the front of Apartment 4–A apartment 4–B with "rejas" and double locks and doors with natural design, on the left side apartment 3–A with "rejas" with double locks and doors with natural design. Our reading of this quoted description from the warrant does not state that these two apartments (4A and 4B)

were facing the hallway door, as the Magistrate concluded. Moreover, from our exhaustive review of the somewhat muddled evidence presented in the record by way of exhibits and testimony at the suppression hearing, we are certain that the warrant did not accurately describe the layout of the fourth floor of the apartment building, notwithstanding the fact that the agent stated in the Sworn Statement, as well as at the Suppression Hearing, that he had followed the defendant up to the fourth floor on the date he conducted the surveillance. According to the Magistrate and the description provided in the warrant, there were three apartments on the fourth floor of the building. From our review of the evidence, the fourth floor only contained two apartment units, both of which were behind the door with the white grill. *See, e.g.,* Suppression Tr. I, at 6 (wife of defendant testified that there is gate leading to hallway with the two apartments, 4B(1) and 4B(2), on the fourth floor of the building). However, the search warrant does not accurately state this layout of the fourth floor, and confusingly refers to three apartment units, all of which are purportedly located on the fourth floor of the building, even though one such apartment designated 3–A, was an alleged typographical error. Also, although the agent claims he knew that the apartment number was 4A because he asked a woman in the building to verify the apartment number, and there was a piece of paper attached to the door, it is impossible to determine from the description in the warrant which apartment mentioned in the warrant is the one actually referred to since apartments 4B(1) and 4B(2)2 were both located behind the hallway door with the white grill. Thus, even though the agent did enter the building and climb up to the fourth floor, the description of the fourth floor is inaccurate: if he only viewed the door with the white grill, which led to the two inner apartments, he would not have been able to state the description of either of the two inner apartments, and if he did enter through the hallway door to note that two inner apartments were behind this door,

the warrant does not accurately reflect which apartment was to be searched. Therefore, in view of such a confusing comparison between the actual layout of the fourth floor of the apartment and the description supplied in the warrant, we conclude that the warrant does not contain a description: 1) adequate to enable the executing officer to locate the premises with reasonable effort, and 2) adequate to ensure, with reasonable probability that another premise might not be searched.

In a case similar to this case, the Supreme Court decided the issue of whether a factual mistake in a search warrant invalidated a warrant that "undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In that case, police officers in Baltimore obtained a warrant to search "the premises known as 2036 Park Avenue third floor apartment," as well as the person of "Lawrence McWebb." When the police applied for the warrant and conducted the search, they thought there was only one apartment on the premises described in the warrant, when in fact, the third floor was divided into two apartments. One of the apartments was occupied by McWebb, and the other by Garrison. After the police began to execute the warrant and found contraband, they suddenly realized they were in the separate apartment occupied by Garrison. Thus, it was only after the search warrant was executed that the officers realized the third floor contained more than one apartment, and hence, the warrant was overbroad.

In deciding whether the factual mistake invalidated the warrant, the Supreme Court stated that the constitutionality of the police officers' conduct should be judged "in light of the information available to them at the time they acted [when requesting the search warrant] ... [so that] the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Id.*, 480 U.S. at 85, 107 S.Ct. at 1017, 94 L.Ed.2d at 81. The Court went on to declare that the warrant's validity would be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose to the issuing magistrate. *Id.* In the *Garrison* case, the record established that the officer gathering information to obtain the warrant made specific inquiries to determine the identity of the occupants of the third floor premises. He went to the building and found that it matched the informant's description; he checked with the local gas and electric company to discover that the premises of the 2036 Park Avenue were in the name of Lawrence McWebb; and he testified that he inquired of the gas company in whose name the third floor apartment was listed; he also checked with the Baltimore Police Department that the police records of Mr. McWebb matched the address and physical description of the building supplied by the informant. *Id.*, 480 U.S. at 85, n. 10, 107 S.Ct. at 1017, n. 10. On the basis of this information, the Court held that the warrant, although ambiguous in scope, was valid when issued.

▮ In the instant case, we conclude that on the basis of the information that Agent Leiva disclosed or had a duty to disclose, the warrant in this case was invalid. According to Agent Leiva's testimony, when conducting surveillance of the defendant, he entered the building and went up to the fourth floor, and spoke to a woman who was allegedly in charge of the building at the time, who corroborated the fact that the apartment number was "4–A." Moreover, he claimed he saw a note posted to the door which stated that the apartment was "4–A." [4] Unlike the officer in the *Garrison* case, Agent Leiva did not disclose either of these facts to the magistrate issuing the warrant. Furthermore, if Agent Leiva did speak to the woman in charge of the apartment building, he

---

4. As defendant points out, both of these statements were not included in the sworn statement incorporated in the warrant. Furthermore, defendant has submitted a Sworn Statement from Ana Aponte Bonilla, property owner and landlord of 176 Pérez Street, which states that Miguel A. Rivera Rodríguez occupied apartment 4(B)(2) at the time of the incident in question.

should have inquired as to the name of the tenant occupying Apartment 4A, and he should have conducted further checks with either the gas and electric company or the police department, in order to accurately ascertain the apartment number and the name of the occupant of the apartment to be searched, as the officer did in the *Garrison* case.[5] Also, the fact that the officers executing the warrant observed the defendant running into his apartment cannot cure an otherwise invalid warrant as "[t]hose items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued." *Garrison,* 480 U.S. at 85, 107 S.Ct. at 1015, 94 L.Ed.2d at 81. Consequently, we find that pursuant to the standards enunciated by the Supreme Court in the *Garrison* case, the warrant is invalid.

The defendant has attempted to raise a separate claim that the search warrant was invalid on the basis of an allegedly false sworn statement. In order to assert such a claim the defendant must satisfy preliminary requirements of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Under *Franks,* the defendant must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard [for the truth], included a false statement in the affidavit in order to rebut the presumption of validity given to an affidavit supporting the search warrant. *See id.,* 438 U.S. at 155, 98 S.Ct. at 2676. Material factual omissions from the affidavit may also invalidate the warrant under *Franks.* Because we have invalidated the search warrant under the particularity requirements, we do not address defendant's claim under *Franks* and whether he satisfied the preliminary requirement.

## C. CONCLUSION

Wherefore, in view of the foregoing, the defendant's motion to suppress is hereby GRANTED. Because the warrant issued

in this case did not fulfill the particularity requirements of the Fourth Amendment, the evidence obtained as a result of the execution of the invalid warrant should be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963); *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *United States v. Berryman,* 717 F.2d 651, 659 (1st Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 125 (1984).

IT IS SO ORDERED.

---

**5.** We note that a search warrant directed against a multiple-occupancy structure which fails to accurately describe the particular subunit to be searched will not ordinarily be held invalid when it adequately specifies the name of the occupant of the subunit. *See* Annotation, *Search Warrant: Sufficiency of Description of Apartment of Room to be Searched in Multiple-Occupancy Structure,* 11 A.L.R.3d 1330, 1340 (1990) and cases cited therein.