**UNITED STATES of America, Plaintiff,**

v.

**Edward J. TRAINOR, III, Defendant.**

**No. CRIM.A. 97–10093 RCL.**

United States District Court,
D. Massachusetts.

Oct. 30, 1997.

Charles P. McGinty, Federal Defender Office, Boston, MA, for Defendant.

Robert E. Richardson, United States Attorney's Office, Major Crime's Division, Boston, MA, for U.S.

## MEMORANDUM AND ORDER ON MOTION TO SUPPRESS

LINDSAY, District Judge.

### INTRODUCTION

The defendant, Edward J. Trainor, III, is charged with extortionate collection of credit, malicious damage to a building by means of an explosive, use of an explosive to commit a felony, and two counts of illegally possessing ammunition. He has filed a motion to suppress the fruits of a search of his home at 138 Walnut Avenue, Revere, Massachusetts, conducted on January 19, 1997, including all evidence seized, observations made, and information obtained as a result of that search. He asserts that the application for the warrant to search his home contained material omissions of fact that were either deliberate or the result of reckless disregard for the truth. He asserts also that the warrant was not supported by probable cause and did not in fact authorize entry into his home.

### Background

The factual background from which the present motion emerges is woven here from the warrant application of Everett police detective Alan Varone, the warrant, and an affidavit submitted by Trainor in connection with the motion.

On January 18, 1997, Varone responded to a report of an explosion at 19 Waverly Street, Everett, Massachusetts. He inquired of the landlord of the premises, Nicholas Belmonte, if he knew who had caused the explosion. Belmonte replied that he did not. When questioned about the presence of younger relatives at the address, Belmonte responded that his grandson, Mark Belmonte, 27, occasionally stayed with him.

Mark Belmonte subsequently arrived at the Waverly Street residence and asked to speak to Varone privately. Mark Belmonte told Varone that he lived in Chelsea, Massachusetts, and that he believed the explosion was a "warning" intended to intimidate him into paying a $250.00 debt owed to Trainor by Mark Belmonte's brother, James. According to Mark Belmonte, James had left the state, and Mark Belmonte had assumed his brother's debts. Belmonte also told Varone that a person named Frank Bitto had advised him to "watch [his] back" if Trainor went unpaid.

Mark Belmonte recounted to Varone that, during a period when Trainor was a tenant at Mark Belmonte's mother's home in the 1980s, Trainor had shown Mark Belmonte how to make a bomb by joining two quarter-sticks of dynamite with some type of clay or playdough, or, alternatively, by using copper pellets. Mark Belmonte said that "about fifteen years ago" someone had planted a bomb in his mother's car, and that he believed Trainor to be responsible, because of the presence of copper pellets in the car.

Varone's investigation then turned to Bitto, who told Varone that he had visited Trainor on January 4, 1997, to pay for drugs he had purchased from Trainor. According to Bitto, Trainor had asked Bitto to warn Mark Belmonte that if he did not pay the debt owed to Trainor by Belmonte, plus interest, some harm would befall the house where Mark Belmonte's grandmother lived.

Based on all of the foregoing information, Varone sought a warrant to search Trainor's home for evidence related to the bombing. In support of his application, Varone submitted an affidavit that stated, in relevant part:

"I have probable cause to believe that probable cause [sic] of the crimes of [bombing] ... will be found at the premises located it 136 Walnut Avenue, first floor apartment ... The number "136–138" is affixed to the left of the front doorway. I seek permission to search only the 136 portion of the residence. 136 Walnut Avenue can be entered through a separate doorway to the right of the main entrance of 136–138 Walnut Avenue. The doorway to 136 Walnut Avenue is at the top of a flight of five stairs."

The warrant application also stated: "As described in paragraph 2, 136 Walnut Avenue is located within a two-story gray structure, the door to which is to the right of the main entrance." This affidavit was attached to and incorporated by reference into the search warrant. No evidence has been presented to the court as to how Varone acquired this description of the premises.

As issued, the warrant authorized search of: "136 Walnut Avenue ... a two story gray structure. The number 136–138 is affixed to the left of the main entrance. 136 Walnut Ave is entered through a door to the right of the main door." The warrant contains the line: "which is occupied by and/or in the possession of Edward J. Trainor, DOB 2–13–63."

## DISCUSSION

### Particularity of the Search Warrant

■ It appears, from photographs of 136–138 Walnut Avenue, submitted with Trainor's affidavit, that Varone's affidavit was inaccurate in a number of respects.

The affidavit states that Trainor lived at an apartment designated 136 Walnut Avenue. He lived in fact at the apartment designated 138 Walnut Avenue. The affidavit describes Trainor's home as being on the first floor level, whereas Trainor actually resided on the second floor.

The affidavit places at the left of the front doorway an address plate showing "136–138." In reality, the address plate appears to the right of the front doorway as one faces the house from the street.

According to the affidavit, "136 Walnut Avenue can be entered through a separate doorway to the right of the main entrance of 136–138 Walnut Avenue." The photographs of 136–138 Walnut Avenue show that this statement was only partly correct. The house at 136–138 Walnut Avenue has a separate entrance at the top of a staircase attached to the right side of the house when one faces it from the street. A door at the top of these stairs, clearly marked "138," provides access to Trainor's apartment. Significantly, however, this entrance also accesses the door to apartment 136 by means of an internal flight of stairs.

The affidavit states that "the doorway to 136 Walnut Avenue is at the top of a flight of five stairs." The main entrance, with direct access to number 136, is at the top of a flight of four stairs. By contrast, the staircase attached to the side of the building has eight.

Based on the photographs, it seems probable that the warrant description erroneously conflated aspects of the two apartments at 136–138 Walnut Avenue. Central to this court's decision, however, is the fact that the warrant, as issued, referred mainly to apartment 136, the wrong apartment. As specified in the warrant, the place to be searched was on the first floor of 136–138 Walnut Avenue, an apartment at the top of a short flight of stairs, accessible by the right-hand staircase. Apartment 136, which was not Trainor's apartment, met this part of the description. Apartment 138, although more directly reached by the right-hand staircase, did not correspond, in any other respect, to the physical description contained in the warrant.

The Fourth Amendment provides that: "No Warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched . . ." U.S. Const. Amend. IV. This requirement ensures that a search will be "carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prevent." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987).

The Supreme Court has held that a warrant is sufficiently particular "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). In *United States v. Bonner*, 808 F.2d 864, 866 (1st Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987), the Court of Appeals for the First Circuit set forth a two-part test for evaluating a warrant's description of the place to be searched. Stating that "the manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police," the court held:

> The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient "to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched."

*Bonner*, 808 F.2d 864 at 866 (citations omitted). The second prong of the *Bonner* test—whether there is a reasonable probability that another premise might be mistakenly searched—recognizes that freedom from unreasonable governmental intrusion lies at the very core of the Fourth Amendment. *See Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 682–83, 5 L.Ed.2d 734 (1961). Because the warrant at issue in the instant case misdescribed the apartment to be searched, there is a reasonable probability that apartment 136 might mistakenly have been searched by an officer executing the warrant. Accordingly, the court finds that the warrant in this case fails to meet the second prong of the *Bonner* test.

■ There is no doubt that minor, technical descriptive errors in a search warrant do not require a court to suppress evidence obtained pursuant to the flawed warrant. *See, e.g., United States v. Pervaz*, 118 F.3d 1 (1st Cir.1997) (upholding the sufficiency of a warrant which listed apartment "156A" as "156," and misdescribed address post at top of stairs leading to entrance as being in front of the building); *United States v. Warren*, 42 F.3d 647, 652–53 (D.C.Cir.1994) (warrant gave correct directions to apartment, but labeled it "1" instead of "B"); *Bonner*, 808 F.2d at 866 (warrant suffered from a "minor, technical omission" where it contained accurate, detailed description, but omitted address); *Torian v. Beckley*, 963 F.Supp. 565, 568 (S.D.W.Va.1997) (address error excusable where residence description "correct and precise").

The warrant in the instant case, however, suffered not from inconsequential, descriptive errors, but from an almost total failure to describe the place to be searched "with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons." *United States v. Bedford*, 519 F.2d 650, 654–55 (3rd Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). Varone stressed in his affidavit that he wished to search "only the 136 portion of the premises," i.e., the first floor apartment. He gave nearly perfect directions to the unit on the first floor. Despite the government's assertion that the second-floor entrance on the side of the building was sufficiently distinctive to compensate for any errors in the warrant, the side entrance in fact allowed access to both units and was therefore not unique to apartment 138.

An officer in the situation presented by the facts of this case would have had to ignore several parts of the warrant to find himself in the right place. In *Bonner*, the First Circuit noted that: "There was no risk . . . agents would be confused and stumble into the wrong house." *Bonner*, 808 F.2d at 866. The warrant in the instant case posed, by contrast, a substantial risk of confusion as to which apartment should be searched. Even worse, the flawed warrant did not simply fail to identify the place to be searched with the

requisite accuracy; it described another place—apartment 136—in detail.

It is true, of course, that in this case the officers executing the warrant actually searched the "right"—that is, Trainor's—apartment. From the record, the court can only conclude that the fact that officers searched the "right" premises was a mere fortuity. Surely the vitality of the Fourth Amendment cannot be made to hang from so slender a thread as the fortuitous blunder of an officer who, with a warrant to search what turns out to be an innocent location, stumbles into a second where he finds a mother lode of incriminating evidence.

In *United States v. Rivera Rodriguez*, 768 F.Supp. 16 (D.P.R.1991), a district court suppressed evidence obtained pursuant to a warrant that contained flaws similar in scope to the ones challenged here. That warrant referenced an apartment number that did not exist, miscounted the number of apartments on each floor, and misidentified a grill-iron gate leading to two apartments as a direct entrance to the apartment to be searched. The court in that case held that the warrant created an unacceptable risk of a wrongful search. So too does the warrant at issue in this case.

The government attempts to salvage the search made here by means of an analogy to those instances where a warrant entirely fails to specify the unit to be searched in a multi-unit dwelling. In such circumstances, the warrant may be saved, provided it names the occupant of the premises to be searched. *See Marvin v. United States*, 732 F.2d 669 (8th Cir.1984); *United States v. Vaughan*, 875 F.Supp. 36 (D.Mass.1995). The warrant in this case did name Trainor as the occupant of the premises to be searched. The government thus urges the court to sustain the validity of the search here, based on the proposition that the warrant would have survived judicial scrutiny had it merely listed the building's address and supplied Trainor's name. See Government's Opposition to Defendant's Motion to Suppress at 9, *citing United States v. Hinton*, 219 F.2d 324, 326 (7th Cir.1955).

The warrant here, however, did much more than merely provide an address and a name. Instead, it set forth a detailed, erroneous description of the premises, thereby suggesting a fundamental misunderstanding about which unit was to be searched. This is a case in which the officers were supplied with too much incorrect information, rather than one in which the name served to cure a dearth of specificity.

The cases the government cites simply do not support the conclusion that a warrant supplying detailed, internally consistent directions to the wrong address is proper so long as it contains the correct name of the occupant. For example, in *United States v. Clement*, 747 F.2d 460 (8th Cir.1984), which the government cites in support of the validity of the present warrant, the inclusion of the name of the occupant of the premises validated the search where the warrant gave the wrong street number of a single-occupancy dwelling. *Cf. United States v. Christopher*, 546 F.2d 496 (2d Cir.1976) (name controlled where a hotel room registered to the defendant was the object of the search and the court found that no question existed, based on the warrant, about which room to search); *State v. Sanders*, 155 Ga.App. 274, 270 S.E.2d 850 (1980) (proper to search hotel room listed under name of person named in warrant rather than number of room). Though by no means insignificant, the errors in the warrants in these cases were not nearly so pervasive as the errors that infected the warrant in this case.

The government also cites *United States v. Haydel*, 649 F.2d 1152 (5th Cir.1981). *Haydel*, however, involved circumstances where the address inaccuracy was attributable to the fact that the building to be searched was located at the intersection of two streets, with addresses and entrances on both. One street was residential and the other commercial, but the residents often entered through the commercial side. The warrant gave the address of one of the commercial establishments, but the accompanying affidavit specified that the Haydel residence was the intended target of the search. The outcome of *Haydel* depended on the court's belief that the affidavit in that case "clarif[ied] an ambiguity on the face of the warrant" by specifying that the premises to be searched were

residential and belonged to John Haydel. *See id* at 1157.

The presence of these clarifying facts distinguishes *Haydel* from the case now before the court. Varone's affidavit contained nothing that clarified the warrant on its face, but was in fact the source of the wrong description. No inconsistency in the nature of the premises to be searched existed, as in *Haydel*, to aid a searching officer in distinguishing between one unit and another.

In evaluating warrant error, courts may consider the precautions taken by the officer who sought the warrant. In *Garrison*, the Supreme Court upheld the validity of a warrant that mistakenly omitted the existence of a second unit, based on the affiant officer's diligent efforts to ascertain the identities and number of people occupying the place to be searched. *See Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Even though the wrong unit was actually searched in that case, the Court forgave the warrant's unintentional overbreadth because the officer had made telephone calls to utility companies in an effort to ascertain who inhabited the building and had confirmed other information contained in the affidavit. *Id.* at 85, 107 S.Ct. at 1017. The officer's failure to discover that a second apartment existed, where his search only revealed the existence of one tenant, was excusable given his attempts to confirm the accuracy of the affidavit. In *Rivera Rodriguez*, the district court employed similar reasoning and attributed the large number of errors in the warrant at issue in that case to the fact that the officer who applied for the warrant relied only on an informant's tip and what proved to be an insufficient examination of the premises, rather than taking other precautions to ensure that he (the officer) had identified the correct apartment. *See Rivera Rodriguez*, 768 F.Supp. at 21.

Varone was aware that two units existed at the Walnut Street address, but the government has offered no evidence that he attempted to ascertain who inhabited which one. While officers are not required to take any particular steps to guarantee that the wrong apartment will not be searched, *Garrison* suggests that at least some caution is appropriate where there is the increased risk of a wrongful search inherent in a multiple-occupancy dwelling. Here, rather than taking extra pains to specify which unit to search, Varone submitted an affidavit tainted either by extreme carelessness or by a mistaken belief that the first floor unit was the actual target. In either event, the warrant raised a grave possibility of wrongful search and therefore failed to meet the particularity requirement of the Warrant Clause of the Fourth Amendment. For these reasons, the defendant's Motion to Suppress is ALLOWED.

In light of the foregoing disposition of the motion to suppress it is unnecessary that the court address the other issues raised by the motion.

SO ORDERED.