**UNITED STATES of America, Appellee,**

v.

**Youssef JORGE, Defendant, Appellant.**

No. 88–1532.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1988.

Decided Jan. 9, 1989.

Robert B. Mann, Providence, R.I., by Appointment of the Court, for defendant, appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for appellee.

Before CAMPBELL, Chief Judge and COFFIN and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

Appellant Youssef Jorge appeals from his conviction for possession with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841. He claims that the district court erred by denying his motion to suppress evidence, by failing to find a violation of the Speedy Trial Act, and by giving certain jury instructions. We have considered each of his arguments, but find that none merits reversal of his conviction.

## I.

The facts as the district court could have found them are as follows. On September 3, 1987, Detective Lieutenant Robert Sylvia of the Middletown, Rhode Island Police Department received a telephone call from an informant, Jon Denaj, who offered to furnish information about drug trafficking in the hope of obtaining favorable treatment on his own drug possession charge. Denaj told Sylvia that he had arranged to purchase cocaine from "Jose." After two subsequent phone calls between Denaj and the police, Sylvia and three other Middletown officers met Denaj on Gano Street in Providence.

Denaj told Sylvia that he had made arrangements to purchase 500 grams of co-

caine for $12,000. Sylvia told Denaj he wanted the seizure to take place in Middletown, and Denaj therefore was to tell Jose that the money for the deal was in Middletown. Sylvia directed Denaj to drive to Middletown using West Main Road if the cocaine were in Denaj's car. Sylvia instructed Detective Christopher Kelly to follow Denaj.

Denaj and Kelly drove to Broad Street in Providence in separate cars, but Kelly then got into Denaj's Volkswagen. Denaj pointed out several places, including a garage on Broad Street, where "Jose" might have the cocaine. Denaj drove Kelly back to his car and then left. When he returned, he told Kelly that he would telephone "Jose." During the conversation at a pay telephone on Broad Street, Kelly heard Denaj ask, "Did we get everything we wanted?" A male on the other end answered, "We got everything we wanted."

Denaj told Kelly he was going to Jose's house, and that Kelly should wait at the Broad Street garage that Denaj previously had pointed out to Kelly. Denaj told Kelly that if the transaction had been done, he would drive past the garage in the Volkswagen. Instead, Denaj drove alone to the garage, where he got out and spoke with appellant for several minutes. Kelly lost sight of appellant, but he followed Denaj, who had gotten back into his car, to an apartment building at 34 Marietta Street. Denaj remained in the building for 10–15 minutes, and then left with appellant. Appellant was carrying a white travel bag.

Denaj got behind the wheel of the Volkswagen, and appellant sat beside him in the front of the car. The car traveled through Providence to West Main Road in Middletown, the road Sylvia had instructed Denaj to take if there were cocaine in the car. At some point, a Middletown police cruiser pulled behind the Denaj vehicle, and Denaj stopped. Sylvia, who had joined Kelly in his vehicle, went to the passenger's side of the Volkswagen. Sylvia saw the white travel bag on the floor of the car between appellant's legs. Appellant's right hand was "inside ... or folded into" the white travel bag.

Sylvia took appellant from the vehicle, and he was handcuffed by other officers. Sylvia testified that he saw a clear plastic bag containing white powder inside the white travel bag. Sylvia then took the white travel bag from the car and removed the plastic bag. The powder was subsequently tested and found to be 506.63 grams of cocaine.

Appellant was taken to the Middletown Police Department and given *Miranda* warnings. He admitted that he was going to Middletown to get money, that he knew individuals who could get cocaine for Denaj, and that he knew cocaine was in the bag. He declined to say who gave him the bag with the cocaine. Appellant was indicted on October 6, 1987, and charged with a single count of possession with intent to distribute in excess of 500 grams of cocaine.

Appellant filed motions to suppress the white bag and its contents, and his statements to police officers at the Middletown Police Department. The district court denied the motions. The court also denied appellant's motion to dismiss for lack of a speedy trial. Appellant was found guilty and sentenced to five years in prison, the minimum term.

On appeal, appellant raises three sorts of claims. He first contends that there was no probable cause for his arrest, and that his arrest and the seizure of the white bag therefore were improper. Even if the arrest were valid, he claims the white bag and its contents should have been suppressed because they were seized in violation of Rhode Island law. He further asserts that his statements at the police department should be suppressed as "fruit of the poisonous tree."

Second, he challenges three aspects of the district court's charge: the reasonable doubt instruction, the instruction on the defendant's decision not to testify, and the modified "*Allen*" charge given when the jury initially was unable to reach a verdict. Finally, he claims the court erred in finding no violation of the Speedy Trial Act.

We now turn to our discussion of these claims.

## II.

■ Appellant claims that the district court erred in denying his motion to suppress the white bag containing the cocaine and the statements he made to Middletown Police Officers following his arrest. The evidence was improperly obtained, he claims, because the officers lacked probable cause to stop the Denaj car and to arrest appellant.

Probable cause exists when " 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir.1987) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). In other words, we consider the totality of the circumstances in evaluating whether the government demonstrated a sufficient " '[p]robability . . . of criminal activity,' " *id.* at 1023–24 (quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983)). *"Probability* is the touchstone. . . . [T]he government need not show 'the quantum of proof necessary to convict.' " *Id.* at 1023 (quoting *United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir.1978)). We review the district court's finding of probable cause under the clearly erroneous standard. *Id.* at 1024.

Our conclusion that the police officers lawfully stopped the Denaj vehicle is based primarily on the nature of the case, in which police officers were closely involved in the development of the crime. Denaj had volunteered to corral another criminal with the hope that he would receive favorable treatment in his own drug case, and

the officers therefore had reason to believe that he would not lead them on a wild goose chase—particularly since Denaj had planned an elaborate scenario in which he would be involved to the end. If at any point it seemed the transaction would not take place as Denaj had promised, it would have been in his interest to tell the officers. Instead, he traveled along the prearranged route to Middletown, indicating that cocaine was in the car.

Other factors also supported the inference that a cocaine deal was in progress. Kelly had overheard the telephone conversation that in his opinion concerned a drug transaction. Denaj and appellant left appellant's house with a white bag immediately before heading to Middletown. Denaj had a history of drug possession, and the officers therefore reasonably could believe that he would have information about a source of narcotics. By adding together Denaj's background and motivation, the telephone conversation, the white bag, and the travel along the "cocaine route," the police officers unquestionably had probable cause to believe that appellant was in the midst of a drug deal with Denaj.[1]

■ Because the officers had probable cause to stop the car and arrest appellant, they had the authority to seize and search the white travel bag. The bag was on the floor of the passenger side of the car, between appellant's legs, and appellant had his hand in or on the bag. Thus, the bag was in the area within appellant's immediate control, and properly was seized as incident to his arrest. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 2034 (1969); *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.

1. Appellant emphasizes that Denaj was a less reliable and credible informant than the informants in *United States v. Campbell*, 732 F.2d 1017 (1st Cir.1984) and *United States v. Ciampa*, 793 F.2d 19 (1st Cir.1986). We note that both of those cases concerned whether search warrant affidavits contained sufficient information to establish probable cause, and thus did not include observations by police officers of ongoing activity in which the informant was involved. These on-the-scene observations of actions consistent with drug transactions, and consistent with what Denaj had discussed with officers, are a distinguishing factor in the probable cause calculus here.

We note, in addition, that "[t]here are so many variables in the probable-cause equation that one determination will seldom be a useful 'precedent' for another." *Illinois v. Gates*, 462 U.S. 213, 238 n. 11, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

2d 768 (1981).[2] Similarly, because the arrest was proper, appellant's statements at the Middletown police station were admissible into evidence.

### III.

Appellant claims that the trial court erred in its instruction on reasonable doubt. He complains first that the court should have given one of the two reasonable doubt instructions proposed by him, and second that the specific language used by the court deprived him of a fair trial.

■ We begin by noting that a trial court need not adopt "the exact form and wording" of the defendant's proposed instructions. *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.1984). Thus, the fact that the court chose not to give appellant's suggested reasonable doubt instructions, which gave no definition of "reasonable doubt,"[3] does not constitute reversible error. Nevertheless, because elaborate definitions of "reasonable doubt" inevitably lead to constitutional challenges, *id.*, it may be prudent on the part of a trial court to consider seriously a defendant's request to define the concept only minimally, or not at all. *See United States v. Littlefield*, 840 F.2d 143, 146 (1st Cir.1988); *United States v. Olmstead*, 832 F.2d 642, 646 (1st Cir. 1987). In so saying, we do not imply that the rhetoric suggested by a defendant should substitute for the court's own choice of language.

As for the specific language of the reasonable doubt charge given in this case, appellant has two objections: first, that the court instructed the jury that a "[r]easonable doubt by definition means a doubt founded upon reason and not conjecture or speculation," and second, that the jury was told that a reasonable doubt is "not a doubt suggested by the ingenuity of counsel and unwarranted by the testimony."

■ We conclude that the district court adequately informed the jury of the constitutional standard of proof necessary for conviction. The court emphasized repeatedly that the government had the burden of proof and also stressed that the presumption of innocence must remain with the defendant throughout the trial and the jury's deliberations. The particular language to which appellant objects did not render the otherwise thorough instruction constitutionally defective. Although we previously have condemned the use of the "ingenuity of counsel" language, we believe that the instruction as a whole would have prevented the jurors from relying on any improper inference drawn from

---

**2.** Appellant argues that the seizure of the bag was unconstitutional under Rhode Island law, and that the evidence therefore must be suppressed in this federal prosecution. We have two problems with this argument. First, the Rhode Island law he asserts concerns automobile searches. *See State v. Benoit*, 417 A.2d 895, 901 (1980) (once a vehicle's mobility has been halted, it may not be searched without a warrant). We need not consider the law on automobile searches, however, because the search-incident-to-arrest exception validated the search here. Second, we reject the contention that state law governs suppression issues in a federal criminal trial. *United States v. Quinones*, 758 F.2d 40, 43 (1st Cir.1985); *United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir.1987) (collecting cases).

**3.** Appellant's two proposed instructions were: (1) Remember that great principle, and it is a great principle of our Constitution in the criminal law, that Mr. Jorge started this case presumed to be innocent. And he cannot be found guilty unless and until you determine that he is guilty beyond a reasonable doubt based upon the evidence (or lack of evidence). And that means that the burden of proving him guilty beyond a reasonable doubt rests on the United States, and it never shifts. He doesn't have anything to explain. He doesn't have to testify. He doesn't have to have called any witnesses or made any arguments or asked any questions. And you may not, you would violate your oath if you held against anyone something that they didn't do, because the law doesn't require them to do anything. That's unfair. The law says to the United States: You've made this charge, prove it beyond a reasonable doubt.
(2) The government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

it. *See United States v. Glantz*, 847 F.2d 1, 11 (1st Cir.1988).[4]

## IV.

■ We address only briefly appellant's other objections to the jury charge. First, he complains about the use of the word "failure" in the following instruction:

> No presumption of guilt may be raised and no inference of any kind may be drawn from the failure of the defendant to testify.

Although we recommend that courts express this concept in a less negative way (e.g., "no inference may be drawn from the defendant's decision not to testify"), there was no reversible error here. The instructions, when viewed as a whole, clearly told the jury that the defendant was under no obligation to testify, and that no adverse inference could be drawn from his decision not to do so.

■ Second, we reject appellant's challenge to the "modified *Allen* charge," a supplemental charge given to the jury after it had communicated its inability up to that point to reach a verdict. Appellant concedes that the instruction given by the court meets the guidelines we set in *United States v. Angiulo*, 485 F.2d 37, 39 (1st Cir.1973). We see no reason to depart from our view that a carefully tailored supplemental charge to the jury is permissible, and we therefore find no error. *See United States v. Nichols*, 820 F.2d 508, 511–512 (1st Cir.1987) (upholding use of modified *Allen* charge). *See also Lowenfield v. Phelps*, —— U.S. ——, 108 S.Ct. 546, 551 n. 1, 98 L.Ed.2d 568 (1988) (noting that all circuit courts have upheld some form of a supplemental jury charge).

## V.

■ Appellant's last claim is that the court erred in failing to find a violation of the Speedy Trial Act. The dispositive question is whether the district court properly excluded 16 days between the time the government filed a "Request for Discovery" and the time appellant filed a response.[5]

Appellant argues that the government's February 10, 1988 request for laboratory reports should not stop the Speedy Trial clock because the request simply repeated an obligation the defense already owed under the omnibus discovery order entered in the case in October 1987. He claims that the government should not be able to trigger excludible time by filing a document that serves no purpose. In addition, he argues that the government's request was not a motion, and therefore does not fall within the provision of the Speedy Trial Act that excludes time for the resolution of pretrial motions.

The government, meanwhile, maintains that the document was for all practical purposes a motion, and so it should be treated as one. The government points out that the relevant provision of the Speedy Trial Act excludes the period of delay resulting from *"any"* pretrial motion, *see* 18 U.S.C. § 3161(h)(1)(F) (emphasis added), which would appear to include motions filed by the government. Thus, the government argues, its request for laboratory reports stopped the clock until appellant responded on February 25 that he had no such reports.

We need not decide whether the government's document technically is a motion. Section 3161(h)(1) excludes "[a]ny period of delay resulting from *other proceedings* concerning the defendant, *including but not limited to* ... (F) delay resulting from any pretrial motion...." (Emphasis added.) Even if the government's "Request" is not a motion, it is sufficiently analogous to a motion to be considered at least an

---

**4.** We noted in *Glantz*, 847 F.2d at 11–12, that the use of the "ingenuity of counsel" language in the future "may well result in a mistrial." We stand by that assertion. In this case, however, the jury was instructed before the *Glantz* decision was issued—although the court would have avoided creating this issue on appeal had it heeded our doubts about the same language in *United States v. Glenn*, 828 F.2d 855, 861 (1st Cir.1987).

**5.** The other points raised by appellant regarding the Speedy Trial claim would have no effect on whether a violation occurred.

"other proceeding" covered by the same section of the Speedy Trial Act. Because we believe it is appropriate to treat the document as at least equivalent to a pretrial motion, we hold that it falls within subsection (F) of § 3161(h)(1).[6]

As to the effect of the document, we appreciate appellant's concern that the government not be able to subvert the Speedy Trial Act by filing superfluous motions or other requests for action. Indeed, we believe trial courts should consider carefully the circumstances surrounding government motions in determining whether they should stop the clock. *Cf. United States v. Hastings,* 847 F.2d 920, 923 (1st Cir.1988) (government should not force litigant to file motion to obtain discovery to which litigant already is entitled).

■■ In this case, however, appellant does not contend that the government acted in bad faith in filing its request for discovery. The government's request for the laboratory report came approximately three weeks before the scheduled March 3 trial date, and nearly two weeks after a laboratory examined the seized cocaine for appellant—timing that suggests that the government may have been concerned about adequately preparing for trial. Moreover, appellant had the ability to limit the amount of excludible time by responding to the government's request more quickly. When the response finally was made, appellant simply stated that no report based on the cocaine examination had been or would be made.[7] In these circum-

stances, we find no error in the district court's decision to exclude the 16 days.

AFFIRMED.

---

6. Other than the title affixed to the document, we fail to see how the government's "Request" would be distinguishable from a discovery "motion." Appellant does not suggest any other difference. In the body of the document, the government *"moves* for the production of any reports...." Both the original request and the appellant's response were filed in court. The parties certainly seemed to treat the document like a motion, confirming our view that we should do likewise.

Several circuits have held that discovery motions trigger excludible time under the Speedy Trial Act. *See, e.g., United States v. Keefer,* 799 F.2d 1115, 1122 (6th Cir.1986); *United States v. Ballard,* 779 F.2d 287, 294 (5th Cir.1986); *United States v. Brim,* 630 F.2d 1307, 1312 (8th Cir. 1980). *See also United States v. Wilson,* 835

F.2d 1440, 1443 (D.C.Cir.1987) (*all* types of pretrial motions are covered by § 3161(h)(1)(F)). Appellant does not dispute this precedent, arguing instead that this was not a proper discovery motion.

7. Appellant's counsel suggested at oral argument that it would be unfair to exclude the time because the government's use of the word "Request" rather than "Motion" gave him no notice that the Speedy Trial Act was implicated. As discussed *supra,* the Act excludes time resulting generally from "proceedings concerning the defendant." We do not believe counsel must be given specific notice of what constitutes a "proceeding"—particularly when the action at issue so closely resembles a specifically listed basis for excluding time.