UNITED STATES of America, Appellee,

v.

Rolando SANTANA, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Juan TEJADA, Defendant, Appellant.

Nos. 89–1657, 89–1658.

United States Court of Appeals,
First Circuit.

Heard Dec. 5, 1989.

Decided Feb. 8, 1990.

Jeffrey A. Denner and Peter T. Elikann
with whom Denner & Associates, Newton,
Mass., was on joint brief, for defendants,
appellants.

Deborah C. Sharp, Asst. U.S. Atty., with
whom Jeffrey R. Howard, U.S. Atty., Con-
cord, N.H., was on brief, for U.S.

Before CAMPBELL, Chief Judge,
COFFIN, Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

In a criminal action in the United States
District Court for the District of New
Hampshire, defendants Rolando Santana
and Juan Tejada were charged with a sin-
gle count of possession with intent to dis-
tribute approximately three kilograms of
cocaine in violation of 21 U.S.C. § 841(a).
Pursuant to Fed.R.Crim.P. 11(a)(2), both
defendants entered conditional pleas of
guilty to the charge. They were sentenced
to 65 months confinement and a $50 special
assessment. Bail was continued pending
timely appeal of the District Court's denial
of their motion to suppress.

I.

On September 21, 1988, an automobile
operated by defendant Tejada, in which de-
fendant Santana was a passenger, was
stopped and searched by a member of the
Salem, New Hampshire Police Department.
The stop was made in response to informa-
tion gathered as a result of police surveil-

lance of the defendants over a period of time.

The surveillance began in the late summer of 1988 when police monitored conversations between defendant Santana and an informant who was wearing a hidden microphone. On the morning of September 21, 1988, New Hampshire State Police Officer Kinneen monitored a conversation between the informant and defendant Santana at an apartment in Salem, New Hampshire. The conversation concerned the purchase by the informant of approximately three kilograms of cocaine from Santana. Delivery of the cocaine was set for 2:00 p.m. that afternoon at the Red Country Store, off Exit 3 of Interstate 93 in Windham, New Hampshire. Later, Kinneen and Agent Graffam of the Drug Enforcement Agency met with the informant, who told them he had done a cocaine transaction with Santana previously at 57 Ferry Street, Lawrence, Massachusetts, the house of Santana's live-in girlfriend. The two officers thereupon traveled to that location but observed nothing. They went back for a second meeting with the informant and were advised that Santana had beeped the informant to push the deal back to 3:30 p.m. Kinneen recognized Santana's beeper number as a Lawrence, Massachusetts number and returned alone to the house at 57 Ferry Street in Lawrence. There, at approximately 3:00 p.m., he observed two Hispanic males leave the house and walk towards the street. One of them (whom he later learned was Tejada) was carrying a package under his arm. Kinneen radioed this information to two Salem Police Department officers who were in surveillance of the area by aircraft. These officers radioed to Kinneen that they observed the two males get into a 1987 Ford Thunderbird Turbo Coup, Massachusetts registration number 122NYJ. Kinneen did not recognize either individual in the Thunderbird, as he did not yet know Santana by sight. He knew only that the informant had been negotiating with a Mr. Santana. Kinneen was expecting two males to consummate the transaction, however, because Santana had told the informant he would not drive for the deal because his license had been suspended in New Hampshire.

Both the aircraft and Kinneen followed the Thunderbird north from Massachusetts to New Hampshire on Interstate 93. After the Thunderbird passed Exit 2, Kinneen radioed another officer, who was dressed in uniform and stationed in a marked Salem police cruiser, to stop the vehicle. This he did approximately two miles south of Exit 3, telling defendants they had made an improper lane change. He found that the car was registered to Tejada and that Tejada was driving. Tejada consented to a search of the interior of the car and the back trunk, but no incriminating evidence was found. Another officer with special expertise in searching for contraband in automobiles was then summoned to assist in the search, and he discovered the cocaine hanging in a plastic bag near the engine block. The cocaine was field tested, and when the results turned out positive, the defendants were arrested.

The defendants were taken to the Salem, New Hampshire Police Department where they received their Miranda warnings. Santana denied any knowledge of the cocaine, but Tejada admitted that he had purchased the cocaine and stated that he had shown Santana the location of the cocaine in the automobile. Tejada confirmed the time and location of the exchange in Windham and consented to a search of his apartment in Lawrence, Massachusetts where more cocaine was ultimately discovered. At the hearing on the motion to suppress, Santana admitted that half of the cocaine belonged to him and that both he and Tejada shared liability for the price of the cocaine, which had been advanced to Tejada by a contact in New York.

## II.

The government contends that Santana lacks standing to contest the stop and search of Tejada's vehicle. While there may be force to this contention, *see, e.g.,* *United States v. Aguirre,* 839 F.2d 854 (1st Cir.1988); *United States v. McHugh,* 769 F.2d 860 (1st Cir.1985), we see no need to decide the question of Santana's standing.

Even assuming he has standing, he cannot prevail, since the district court did not err in its determination that the New Hampshire police had probable cause to believe that the vehicle owned and driven by Tejada contained contraband. *See* below. The police, consequently, were authorized to stop and search the vehicle without a warrant and to seize the cocaine.

### III.

In *Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925), the Supreme Court held that the search without a warrant of an automobile, and the seizure therein of contraband, did not violate the Fourth Amendment if made upon probable cause, i.e., upon a belief, reasonably arising out of circumstances known to the police officer, that the vehicle contained such contraband. This rule has been confirmed in subsequent cases. *See Chambers v. Maroney*, 399 U.S. 42, 47–48, 90 S.Ct. 1975, 1979–80, 26 L.Ed.2d 419 (1970) (if there is probable cause, an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office); *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982) (searches of vehicles that are supported by probable cause to believe that the vehicle contains contraband are not unreasonable if based on objective facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained). *Ross* also held that where police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search. The scope of the search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *Id.* at 820–24, 102 S.Ct. at 2170–73.

Probable cause has, in turn, been defined in both Supreme Court and First Circuit precedent.

> Probable cause exists when " 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir.1987) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 [85 S.Ct. 223, 225, 13 L.Ed.2d 142] (1964)). In other words, we consider the totality of the circumstances in evaluating whether the government demonstrated a sufficient " '[p]robability ... of criminal activity,' " *id.* at 1023–24 (quoting *Illinois v. Gates*, 462 U.S. 213, 235 [103 S.Ct. 2317, 2330, 76 L.Ed.2d 527] (1983)). *"Probability* is the touchstone.... [T]he government need not show 'the quantum of proof necessary to convict.' " *Id.* at 1023 (quoting *United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir.1978)). We review the district court's finding of probable cause under the clearly erroneous standard. *Id.* at 1024.

*U.S. v. Jorge*, 865 F.2d 6, 9 (1st Cir.1989).

■ There was no clear error in the determination of the district court here that the totality of the circumstances demonstrated that the officers who stopped Tejada's vehicle and engaged in a search and seizure had probable cause for doing so. Their monitoring of the conversation between the informant and Santana, the information that Santana's beeper number was a Lawrence, Massachusetts number, the information that Santana had sold drugs to the informant in the past from the 57 Ferry Street location, combined with their expectation that Santana—a Hispanic—would proceed to the designated location in the company of another person due to the suspension of his driver's license, were sufficient to warrant a prudent police officer in believing that the two Hispanic males who exited the 57 Ferry Street location shortly before the time designated for the transaction, and proceeded in the direction of and to a point close to the location designated for the consummation of the transaction, were engaged in the offense of possession of cocaine with intent to distribute.

Defendants argue that, even if the police had probable cause to search the automobile, the "automobile exception" does not apply to the facts of this case, and, thus, that the police should have obtained a warrant before searching the car. *See Arkansas v. Sanders*, 442 U.S. 753, 760 n. 7, 99 S.Ct. 2586, 2591 n. 7, 61 L.Ed.2d 235 (1978) ("the 'automobile exception' ... does not invariably apply whenever automobiles are searched"); *Coolidge v. New Hampshire*, 403 U.S. 443, 461–62, 91 S.Ct. 2022, 2035–36, 29 L.Ed.2d 564 (1971) (automobile exception inapplicable to search of parked car in driveway). This argument is without merit. Defendants' automobile was stopped by the police on the highway prior to the search. The Supreme Court has held that "[o]ne of the circumstances in which the Constitution does not require a search warrant is when the police *stop an automobile on the street or highway* because they have probable cause to believe it contains contraband or evidence of a crime." *Arkansas v. Sanders*, 442 U.S. at 760, 99 S.Ct. at 2591 (emphasis added). *See also Coolidge v. New Hampshire*, 403 U.S. at 462, 91 S.Ct. at 2036 (meaning and purpose of the automobile exception established by *Carroll v. United States* is tied to the mobility of automobiles: the potential of flight, the need to prevent a lost opportunity, the possibility of discovering contraband in transit, and so forth).

### IV.

■ Tejada contends that the evidence obtained by means of (1) extraterritorial surveillance conducted in Massachusetts by the New Hampshire Police and (2) the monitoring of the body wire worn by the informant, violated state law. Accordingly, he argues, the district court should not have considered that evidence as part of the totality of the circumstances when determining whether there was probable cause. We need not decide whether state law was violated, however, because "[it] is well settled that in federal prosecutions evidence

admissible under federal law cannot be excluded because it would be inadmissible under state law." *United States v. Quinones*, 758 F.2d 40, 43 (1st Cir.1985) (citations omitted). *See also United States v. One Parcel of Real Property*, 873 F.2d 7 (1st Cir.1989) (evidence seized by state police without any federal participation and in violation of state law pertaining to execution of warrants at night was admissible in federal prosecution where, under federal law, property was fully subject to search at that hour); *United States v. Jorge*, 865 F.2d 6, 10 n. 2 (1st Cir.1989) (state law does not govern suppression issues in federal criminal trial, so federal district court was not required to consider whether seizure of bag was unconstitutional under Rhode Island law in federal drug prosecution).

The use of extraterritorial surveillance by the New Hampshire police, as well as its use of the body wire to monitor Santana's conversations with the informant, comported fully with federal law. Federal law places no notification requirements on state agents who enter neighboring states to observe criminal suspects. And section 2511(2)(c)[1] of the Omnibus Crime Control Act, 18 U.S.C. §§ 2510 *et seq.*, permits the monitoring of an informant's body wire when, as here, the monitoring took place with the consent of the informant.

In *United States v. Jarabek*, 726 F.2d 889 (1st Cir.1984), we held that monitoring of conversations in accordance with 18 U.S.C. § 2511(2)(c) carries no requirement that such monitoring conform additionally to state law. We said that, in general, state law will not be applied except in federal prosecutions in which the electronic surveillance is conducted pursuant to state court authorization. *Id.* at 900. Here, because the body wire surveillance (1) involved the participation of federal authorities, and (2) fulfilled the requirement of 18 U.S.C. § 2511(2)(c) that one of the parties to the communication have given prior consent, the district court properly rejected

---

**1.** (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one

of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

854

defendant's argument that the information thus obtained could not be recognized as forming a valid link in the chain of probable cause.

We hold, therefore, that probable cause existed for the search of Tejada's automobile and that the cocaine seized pursuant to the search was admissible into evidence. The district court correctly denied defendants' motion to suppress.

Because the search and seizure did not violate Tejada's rights under the Fourth Amendment, there is no force to Tejada's further argument that his post-arrest statements should have been suppressed as "fruits of the poisonous tree" [i.e., as derivative of the prior allegedly illegal search and seizure]. Nor is there ground to suppress the other evidence gathered as a result of those statements.

*Affirmed.*