**UNITED STATES of America**

**v.**

**Allen C. VAUGHAN.**

**Crim. A. No. 93–10172–MLW.**

United States District Court,
D. Massachusetts.

Jan. 4, 1995.

Alfred P. Farese, Jr., Richard C. Chambers, Everett, MA, for defendant.

Timothy Q. Feeley, U.S. Atty., Boston, MA, for U.S.

LASKER, District Judge.

The report and recommendation of Hon. Marianne B. Bowler, U.S.M.J., is adopted and defendant's motion to suppress is allowed with respect to evidence seized in the basement storage room and is otherwise denied.

It is so ordered.

## REPORT AND RECOMMENDATION RE:

## DEFENDANT'S MOTION TO SUPPRESS (DOCKET ENTRY # 10);

## DEFENDANT'S MOTION TO SUPPRESS

### (DOCKET ENTRY # 18)

August 8, 1994

BOWLER, United States Magistrate Judge.

Pending before this court are two motions to suppress filed by defendant Allen C. Vaughan ("defendant Vaughan"). (Docket Entry ## 10 & 18).

On May 27, 1993, a one count Indictment issued charging defendant Vaughan with possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). On June 11, 1993, defendant Vaughan filed a motion to suppress. (Docket Entry # 10). Defendant Vaughan seeks to suppress a sawed off Winchester model 1200, 12 gauge shotgun with the serial number L1306147 ("the sawed off shotgun"), and certain other physical evidence seized during a search of premises located at 37 Waverly Street in Lynn, Massachusetts under a state court search warrant issued and executed on September 26, 1990 ("the warrant"). The sawed off shotgun forms the basis for the charge of possessing an unregistered firearm.

On July 15, 1993, a two count superseding Indictment issued charging defendant Vaughan with possessing the above noted unregistered sawed off shotgun in violation of 26 U.S.C. § 5861(d) and, in addition, being a felon in possession of a firearm, to wit, a .25 caliber pistol and 10 .25 ACP caliber cartridges in violation of 18 U.S.C. § 922(g)(1). On August 6, 1993, defendant Vaughan filed a second motion to suppress moving to suppress the same sawed off shotgun seized during the September 26, 1990 search and to suppress the .25 caliber pistol and ammunition seized in the course of defendant Vaughan's June 2, 1993 arrest. (Docket Entry # 18). With respect to the pistol and ammunition, defendant Vaughan theorizes that the June 2, 1993 seizure was based on the fruits of the September 26, 1990 illegal search and seizure. Hence, the initial issue is the legality of the September 26, 1990 warrant and the search and seizure of evidence thereunder.

Defendant Vaughan's grounds to suppress the evidence are as follows: (1) the warrant is invalid on its face for lack of particularity; (2) defendant Vaughan did not consent to the September 26, 1990 search; (3) the September 26, 1990 search exceeded the scope of the warrant; (4) the September 26, 1990 search

warrant was issued without probable cause; and (5) the June 2, 1993 arrest and search resulted from evidence obtained illegally during the September 26, 1990 search and therefore constitutes "fruit of the poisonous tree." (Docket Entry ## 10 & 18).

On July 11, 1994, this court held a hearing on the motions to suppress (Docket Entry ## 10 & 18). This court continued the hearing in order to provide defendant Vaughan the opportunity to subpoena the police officer who executed the warrant, Kenneth L. Avery ("Officer Avery").

On July 13, 1994, this court held an evidentiary hearing and, at the close of the hearing, took the motions to suppress (Docket Entry ## 10 & 18) under advisement. Officer Avery, subpoenaed by defendant Vaughan, and Captain Joseph H. Rowe ("Captain Rowe"), appearing on behalf of the government, testified at the July 13, 1994 hearing.

The warrant permits the search of "37 Waverly Street, Lynn, MA, as a three family wooden structure, yellow in color with the number 37 affixed to the front of the house ... which is occupied by and/or in the possession of Earl Vaughan." The warrant thereby authorized the search of that portion of the structure at 37 Waverly Street occupied by and/or in the possession of Earl Vaughan. Earl Vaughan is the son of defendant Vaughan.

Specifically, the warrant directs the person to search for any article used to package, sell or distribute a controlled substance or currency connected to the sale or distribution of a controlled substance as defined in section 31 of chapter 94C of Massachusetts General Laws and "any person present. [sic] at: 37 Waverly Street ... which is occupied by and/or in the possession of Earl Vaughan." The warrant additionally allows the search of "any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." (Docket Entry # 20, Ex. A). The scope of the warrant therefore included any persons present in the structure occupied by and/or in the possession of Earl Vaughan who might be found to have drug paraphernalia in their control.

As depicted in the affidavit submitted in support of the warrant, the warrant stems from information related on September 25, 1990, from two detectives with the Los Angeles Police Department to Officer Avery, a member of the Lynn Police Department. The detectives advised Officer Avery they were performing a "profile" on a package leaving Los Angeles via Federal Express, addressed to Earl Vaughan, West Lynn Welding, at 37 Waverly Street in Lynn. They informed Officer Avery that a canine, handled by Officer Charles M. Daniels ("Officer Daniels"), a Narcotics Detection Canine Handler with the Los Angeles Police Department, had made a positive "hit" of the package.

The affidavit describes Officer Daniels' experience and the canine's 1100 hours of training. Officer Avery, the affiant, avers his belief of illegal drugs located inside the Federal Express package. After the package was sent from Los Angeles, a Federal Express office in Peabody, Massachusetts held the package pending further instruction from Officer Avery. In light of the above information, Officer Avery requested an anticipatory warrant "to search the premises of 37 Waverly Street, ... the apartment belonging to Earl Vaughan after the package has been delivered." (Docket Entry # 20, Ex. A).

On September 26, 1990, Officer Avery executed the warrant. Captain Rowe accompanied him and participated in the search. Officer Avery characterizes the residence at 37 Waverly as "a three family." (Tr. 5 & 42). Defendant Vaughan, his wife and Earl Vaughan live on the first floor of the 37 Waverly Street structure. (Tr. 41). Earl Vaughan sleeps and occupies a first floor bedroom. (Tr. 19).

After observing a Federal Express employee deliver the package, Officer Avery went to the door and knocked. Defendant Vaughan answered the door and Officer Avery provided him with a copy of the warrant. After being asked the location of the package, defendant Vaughan told Officer Avery that the package was in the bedroom of his son, Earl Vaughan. Defendant Vaughan then brought Officer Avery into

Earl Vaughan's bedroom where Officer Avery opened the package and discovered what appeared to be marihuana. (Tr. 17–18 & 28–30).

While in the bedroom, Officer Avery searched and located marihuana seeds and a gun. On direct, Officer Avery did not remember conversing with defendant Vaughan after he found the marihuana seeds and gun. Officer Avery, together with Captain Rowe, proceeded to search the entire first floor. At an undetermined time, Earl Vaughan appeared on the premises. (Tr. 18–23, 31 & 54–56).

The basement is accessed from a common hallway located off the kitchen. Opposite the kitchen door is a stairwell leading to the second floor which was occupied by defendant Vaughan's mother. Next to the stairwell, is a locked door leading to the basement and a door leading to the back porch.

Without knowing who occupied the basement and approximately five minutes after entering the residence, Captain Rowe requested access from defendant Vaughan to the locked door leading to the basement. Captain Rowe wished to enter the basement to ensure that no other persons were present and to continue the search for articles related to the distribution of marihuana pursuant to the warrant. (Tr. 42–45, 53 & 56–58).

Defendant Vaughan produced a key which unlocked the basement door. Captain Rowe and Officer William Alphen, presumably a member of the Lynn Police Department, proceeded down the stairs into the basement without defendant Vaughan and conducted a search of the area. At a later point in time, Officer Avery came down into the basement. (Tr. 23 & 42–45).

Captain Rowe observed a gun cabinet "halfway down the [basement]." After speaking with defendant Vaughan, Captain

Rowe obtained a key and gained access to the cabinet. (Tr. 45–46 & 58–60).

■ To the left of the basement stairs, Captain Rowe also observed a door secured by a padlock. Captain Rowe requested access to the padlocked room from defendant Vaughan. Thereafter, defendant Vaughan produced another key. At Captain Rowe's request, defendant Vaughan accompanied Captain Rowe into the basement. Defendant Vaughan unlocked the door thereby allowing Captain Rowe to enter the storage room. Captain Rowe did not inquire of defendant Vaughan as to whether Earl Vaughan occupied the storage room and, in fact, was satisfied that Earl Vaughan did not occupy the storage room. Before unlocking the door, defendant Vaughan explained that the storage room was a workshop where he came. He added that no one else came into the storage room.[1] Thereafter, defendant Vaughan returned to the first floor. (Tr. 46–47 & 60–64).

In the storage room, Captain Rowe saw what appeared to be a work bench and a locked blue steel cabinet with two doors approximately four feet in width and six feet in height. Captain Rowe therefore went upstairs and spoke with defendant Vaughan who produced a key to unlock the top drawer of the blue steel cabinet. Captain Rowe returned to the basement storage room, opened the top drawer of the blue steel cabinet and located the sawed off shotgun. (Tr. 47–48).

## DISCUSSION

■ On a motion to suppress, the defendant has the burden to show a violation of his Fourth Amendment rights. *United States v. Dall,* 608 F.2d 910, 914 (1st Cir.1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63

---

1. The transcript appears to contain a typographical error to the extent that it refers to Captain Rowe's answer as a question. Captain Rowe's exact words are as follows:

Prior to Mr. Allen Vaughan unlocking that door, he stated to me, "This is my room. This is where I come. It's kind of a play area or a workshop." ... My report also indicates he then said something to the effect, "No one else comes in here."

(Tr. 63).

It is generally permissible to consider hearsay testimony in a suppression hearing. *United States v. Marchand,* 564 F.2d 983, 992 n. 18 (2nd Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *see also* Stephen H. Saltzburg & Michael M. Martin, *Federal Rules of Evidence Manual* p. 571 (1994); John Welsley Hall, Jr. *Search and Seizure* § 45:48 (1993).

L.Ed.2d 603 (1980); *see generally* 4 Wayne R. LaFave *Search and Seizure* § 11.2(b) (1987) (federal courts generally follow rule that if search was made pursuant to warrant, the defendant bears burden of proof). As previously stated, defendant Vaughan seeks to suppress the seized evidence because: (1) the warrant is invalid on its face for lack of particularity; (2) defendant Vaughan did not consent to the September 26, 1990 search; (3) the September 26, 1990 search exceeded the scope of the warrant; (4) the September 26, 1990 search warrant was issued without probable cause; and (5) the June 2, 1993 arrest and search resulted from evidence obtained illegally during the September 26, 1990 search and therefore constitutes "fruit of the poisonous tree." (Docket Entry ## 10 & 18).

## I. *Particularity of the Warrant*

■ Defendant Vaughan argues that the warrant is invalid on its face because it fails to accurately describe the premises to be searched and the scope and limitations of such a search. In the context of a federal prosecution, federal law governs suppression issues despite the execution of a search by state officials. *United States v. Jorge*, 865 F.2d 6, 10 n. 2 (1st Cir.), *cert. denied*, 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989); (rejecting contention that "state law governs suppression issues in a federal criminal trial"); *United States v. Quinones*, 758 F.2d 40, 43 (1st Cir.1985); *United States v. Bedford*, 519 F.2d 650, 653–654 (3rd Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976) (warrant need only satisfy federal constitutional requirements rather than state law in federal prosecution although "resulting search is 'state' in character").[2]

■ The Fourth Amendment requires that a warrant describe with particularity the place to be searched. The instant warrant depicts a "three family" structure and, hence, a multiunit dwelling. *See United States v. Hinton*, 219 F.2d 324, 326 (7th Cir.1955) (defining "single living unit" as synonymous with "residence of one person or family"). The twofold test to assess the adequacy of

the description of the searched location is: "whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Bonner*, 808 F.2d 864, 866 (1st 1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). A warrant for a "multiple occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately." *United States v. Rivera Rodriguez*, 768 F.Supp. 16, 18 (D.P.R.1991).

■ Defendant Vaughan points out, correctly, that the warrant fails to denote a particular subunit of the building at 37 Waverly Street. (Docket Entry # 19). The warrant, however, names the person occupying the subunit, Earl Vaughan.

■ The particularity requirement with respect to multiunit buildings "may be satisfied by giving the address of the building [37 Waverly Street] and naming the person whose apartment is to be searched [Earl Vaughan]." *United States v. Hinton*, 219 F.2d at 326. Similarly, as noted in *Rivera*, "a search warrant directed against a multiple-occupancy structure which fails to accurately describe the particular subunit to be searched will not ordinarily be held invalid *when it adequately specifies the name of the occupant of the subunit.*" *United States v. Rivera Rodriguez*, 768 F.Supp. at 21, n. 5 (emphasis added); *see generally* 2 Wayne R. LaFave *Search and Seizure* § 4.5(b) (1987) ("subunit may be sufficiently designated by the name of the occupant").

Because the warrant limits the search area to that occupied by or in the possession of Earl Vaughan, it sufficiently particularizes the area inside the building to be searched. With reasonable effort, the executing officers could identify the area to be searched, i.e., Earl Vaughan's bedroom and any other area occupied by and/or in the possession of him. Further, because the warrant limited the 37

**2.** State law is nevertheless relevant in determining the confines of the Fourth Amendment.

Waverly Street address to premises "occupied by and/or in the possession of Earl Vaughan," it is not reasonably probable that another area not belonging to Earl Vaughan, such as the second floor area occupied by defendant Vaughan's mother, would be searched. In sum, the warrant at issue meets the twofold test depicted in *Bonner.*

## II. *Lack of Consent and Scope of the Area Searched*

Citing *Bumper v. State of North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968) (no consent to conduct search when such consent is given only after official asserts his possession of warrant), defendant Vaughan argues that he did not consent to the September 26, 1990 search. The government fails to address whether defendant Vaughan's production of keys to unlock the basement door and the padlocked storage room therein, to the extent outside the scope of the warrant, constitutes consent. *See United States v. Cruz Jimenez,* 894 F.2d 1, 6–7 (1st Cir.1990); *United States v. DiPrima,* 472 F.2d 550, 551 (1st Cir.1973); *United States v. White,* 1992 WL 49994 (W.D.N.Y. March 3, 1992). The government, however, bears the burden of establishing consent, *Bumper v. State of North Carolina,* 391 U.S. at 548, 88 S.Ct. at 1791, and, apparently, does not rely on consent as a basis to justify the search. Hence, this court will not address this argument as a means to justify the search.

The government does, however, address defendant Vaughan's argument that the search of areas other than Earl Vaughan's first floor bedroom exceeded the scope of the warrant. Admittedly, the basement was locked and the storage room therein was defendant Vaughan's personal workshop. (Tr. 63–64). Defendant Vaughan therefore contends that the search of the basement storage room under the control of defendant Vaughan was improper. (Docket Entry # 19).

The authority to search under a valid warrant "is limited to the specific places described in it, and does not extend to additional or different places." *United States v. Heldt,* 668 F.2d 1238, 1262 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982) (citing *United States v. Principe,* 499 F.2d 1135, 1137 (1st Cir.1974)). The descriptions provided in the warrant are "highly relevant in determining the permissible scope" of the search. 2 Wayne R. La-Fave *Search and Seizure* § 4.10(a) (1987). It is generally true, however, that a search of containers, chests, drawers and closets made during the execution of a valid warrant does not require an additional warrant. *See United States v. Morris,* 491 F.Supp. 222, 226 (S.D.Ga.1980), *affm'd,* 647 F.2d 568, 572–573 (5th Cir.1981) (search of locked jewelry box made during execution of search warrant for home deemed permissible). As stated by the Supreme Court:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

*United States v. Ross,* 456 U.S. 798, 820–821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982).

The warrant at issue applied to the multiunit structure at 37 Waverly Street occupied by and/or in the possession of Earl Vaughan. As to multiunit buildings, a warrant to search one apartment therein (the area occupied by and/or in the possession of Earl Vaughan) does not permit the search of another apartment therein (the area on the second floor occupied by defendant's mother). *See United States v. Hinton,* 219 F.2d at 325–326.[3]

---

**3.** As expressed by one commentator:
> If a search warrant specifies only a portion of a certain building, then only that portion may be searched. This means, for example, that if the warrant authorized a search of the first floor of a building, the police may not search the second floor.

2 Wayne R. LaFave *Search and Seizure* § 4.10(a) (1987).

Officer Avery and Captain Rowe searched: (1) the first floor, including the area of defendant Vaughan's bedroom; (2) the basement, including a locked gun cabinet halfway down the basement; and (3) the locked storage room in the basement. For reasons stated below, it was appropriate for the officers to search the first floor and the basement. It was improper, however, for the officers to search the locked storage room in the basement.

■ With respect to the first floor, the case cited by the government, *United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir.1991) (search warrant issued based on the defendant's son's drug activities permitted search of entire premises, including closet in the defendant's bedroom), as well as the principle enunciated in *Ross*, support the conclusion that the warrant permitted a search of the entire first floor of the structure at 37 Waverly Street. Defendant Vaughan's bedroom was an integral part of the area occupied by and/or in the possession of Earl Vaughan. There were no locks barring Earl Vaughan's use and access to his father's bedroom. Controlled substances could be easily hidden in the father's bedroom.[4] The parties had a family relationship. There was no evidence that Earl Vaughan rented the bedroom from his father, that the bedroom had a private entrance separate from the rest of the first floor, that Earl Vaughan locked the bedroom door or that he lacked access to his father's bedroom or to any other room on the first floor. The entire first floor area thereby constitutes the unit or apartment within the 37 Waverly Street structure occupied by and/or in the possession of Earl Vaughan. Hence, the first floor fell within the scope of the search described in the warrant.

■ As to the basement, the evidence shows that it was accessed through a common hallway which, as a common area and part of the first floor, was occupied by and/or in the possession of Earl Vaughan. The evidence further indicates that the basement was part of the first floor unit. *See United*

States v. Principe*, 499 F.2d at 1137 (warrant for apartment in multiunit building authorized search of cabinet three to six feet away inasmuch as "officers could reasonably suppose ... that the cabinet was appurtenant to the apartment"). Defendant Vaughan, a resident of the first floor, produced the key to access the basement. There was no showing that Earl Vaughan lacked access to the basement or did not, at times, occupy the basement. Nor does the fact that defendant Vaughan produced a key to the basement establish that he had exclusive control over the basement area. Rather, it is reasonable to conclude that Earl Vaughan had access to the basement in light of the layout of the first floor. It was also reasonable to surmise that the basement contained the objects of the search, i.e., persons or controlled substances or articles associated with the distribution or sale of such substances.

Furthermore, case law supports the conclusion that the search of a basement or attic connected to an apartment in a multiunit building is permissible under warrants limited to the apartment. *See, e.g., United States v. Elliott*, 893 F.2d 220, 225 (9th Cir.), *opinion amended and rehearing denied*, 904 F.2d 25 (9th Cir.), *cert. denied*, 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990) (warrant for apartment included adjacent storeroom); *Commonwealth v. Scala*, 380 Mass. 500, 404 N.E.2d 83, 89 (1980) (designation of second floor apartment encompassed search of attic inasmuch as entrance to attic was from second floor apartment and no other apartments shared the attic); *United States v. Heldt*, 668 F.2d at 1265–1266 (warrant for suite of offices of individual authorized search of adjacent, free standing penthouse accessed through offices despite occupancy of penthouse by another individual); *see generally* 2 Wayne R. LaFave *Search and Seizure* § 4.10(a) (1987) (collecting cases at footnotes 12 and 13). Search of the basement, including the locked gun cabinet, therefore lay within the scope of the warrant.

---

4. As reasoned in *Ayers*, the better and more likely hiding place for contraband lies outside Earl Vaughan's bedroom, i.e., on the first floor or elsewhere provided Earl Vaughan had access to

the area. *See United States v. Ayers*, 924 F.2d at 1480 (because "most obvious place" to search is drug dealer's bedroom, "any other portion of the house [is] a more secure hiding place").

As to the locked storage room to the left of the basement stairs, however, defendant Vaughan explicitly stated to Captain Avery that the padlocked room was his room. He also informed Captain Rowe that no one else had access to the room. Captain Rowe testified that he was satisfied that Earl Vaughan did not occupy this room. The record therefore shows that defendant Vaughan had exclusive control of this storage room and that Earl Vaughan did not occupy this room. Importantly, the warrant at issue pertains to a multiunit structure. Thus, cases involving searches of single family dwelling houses occupied by and/or in the possession of a particular individual are inapposite. *See, e.g., Commonwealth v. Walsh,* 409 Mass. 642, 568 N.E.2d 1136, 1139 (1991) (warrant for home occupied by and/or in the possession of a particular individual permitted search of locked room occupied by the defendant). Cases permitting searches of areas in multiunit dwellings often rely on the fact that the defendant had control over the area searched. *See, e.g., Walbey v. State,* 644 S.W.2d 813, 815 (Tex.App.Ct.1982) (search of apartment extended to locked patio affixed to apartment inasmuch as the defendant had control of the patio area).

The government relies on cases from the first, second and ninth circuits.[5] In *Canestri,* the Second Circuit upheld the search of a locked storeroom in the basement of a house despite the fact that the warrant applied to the home of the defendant's brother, Joseph Canestri, and despite the fact that the defendant, James Canestri, used the locked storeroom. *United States v. Canestri,* 518 F.2d 269, 273–274 (2d Cir.1975).[6] *Canestri,* however, involved the search of a locked storeroom in the basement of a single family residence. In addition, although *Canestri* permitted the search of the locked storeroom in the basement used by the defendant and not by the person who was the object of the

search, the court explicitly noted "there was no evidence presented at the suppression hearing which showed that Joseph Canestri did not have access to the storeroom." *United States v. Canestri,* 518 F.2d at 274. In the case at hand, there is uncontroverted evidence that Earl Vaughan lacked access to the basement storage room.

The government also relies on *United States v. Principe,* 499 F.2d 1135 (1st Cir. 1974) (warrant for apartment in multiunit building authorized search of cabinet appurtenant thereto) and *United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991) (search warrant for single family residence issued based on the defendant's son's drug activities permitted search of entire premises, including closet in the defendant's bedroom). While these cases support the validity of the officers' search of the entire first floor and of the basement, neither case supports the entry into a locked storage room in a basement in the face of evidence that the person named in the search never occupied the room and in the context of a warrant pertaining to a multiunit structure. In *Principe,* the court noted that the tenant had a key to the locked cabinet and was told he could use the cabinet. *United States v. Principe,* 499 F.2d at 1137. *Ayers* did not involve the search of a multiunit structure. Further, the reasoning employed in *Ayers* that controlled substances can be hidden in any part of a dwelling is inapposite when the evidence unequivocally shows that the alleged drug dealer had no access to the room in question.

As to the locked blue steel cabinet in the basement storage room, the government argues that the plain view doctrine legitimizes the seizure of the sawed off shotgun therein. The plain view doctrine requires the government to demonstrate the following:

First, the officers' presence at the point of discovery must be lawful. Second, discov-

---

5. The government relies on: (1) *United States v. Canestri,* 518 F.2d 269 (2nd Cir.1975); (2) *United States v. Principe,* 499 F.2d 1135 (1st Cir.1974); and (3) *United States v. Ayers,* 924 F.2d 1468 (9th Cir.1991).

6. As reasoned in *Canestri,* excluding the basement storeroom from the scope of the warrant

" 'would be to suggest that the purpose of a search warrant could be frustrated by the mere declaration of the owner of a *one-family* [emphasis added] residence that one of the rooms therein "belongs" to a party not named in the warrant.' " *United States v. Canestri,* 518 F.2d at 273 (quoting *United States v. Jordan,* 349 F.2d 107, 109 (6th Cir.1965)).

ery of the seized item must be inadvertent. Third, the item's evidentiary value must be immediately apparent to the searchers. One can think of these three criteria as comprising (1) justifiable presence (2) inadvertent discovery, and (3) immediate awareness.

*United States v. Rutkowski*, 877 F.2d 139, 140–141 (1st Cir.1989). Inasmuch as Captain Rowe's presence in the storage room exceeded the scope of the warrant, the government fails in its burden to show justifiable presence.

In sum, seizure of articles in the locked storage room in the basement and, in particular, the sawed off shotgun in the blue steel cabinet exceeded the scope of the search described in the warrant. Authority to search is limited to places described in the warrant. *United States v. Principe*, 499 F.2d at 1137. Exclusion of evidence seized from the basement storage room is therefore appropriate. In contrast, evidence seized from the first floor and from the basement, exclusive of the locked storage room, is not subject to suppression.

### III.  *Probable Cause for the Warrant*

As previously noted, it is defendant Vaughan's burden to show the violation of his Fourth Amendment rights. In the June 11, 1993 motion to suppress and supporting memorandum (Docket Entry ## 10 & 11), defendant Vaughan argues that the warrant issued without probable cause apparently because the supporting affidavit contains unreliable hearsay from a confidential informant. The simple answer to defendant Vaughan's argument is that the affidavit at issue does not rely on information from a confidential informant.

■ While defendant Vaughan's August 11, 1993 motion to suppress (Docket Entry # 18) reiterates the ground of lack of probable cause, the supporting memoranda (Docket Entry # 19) completely fails to address this argument. As articulated by the government, LR. 7.1(B)(1) requires a proponent to "file a memorandum of reasons, including citation of supporting authorities," in support of a motion. (Docket Entry # 14).

■ "A district court enjoys great leeway in" applying and enforcing its local rules. *United States v. Roberts*, 978 F.2d 17 (1st Cir.1992) (local rule in context of motion to suppress). While the failure to address the probable cause argument does not appear wilful, the government's response to the June 11, 1993 motion to suppress pointed out the procedural deficiencies in defendant Vaughan's probable cause argument. Nevertheless, defendant Vaughan proceeded to file a second motion to suppress asserting but not addressing the probable cause argument. *See Collins v. Marina–Martinez*, 894 F.2d 474, 481 & n. 9 (1st Cir.1990) ("issues mentioned in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived"). Such conduct cannot be countenanced. In light of defendant Vaughan's failure to comply with LR. 7.1(B)(1) and his failure to set forth a developed argument sufficient to carry his burden, his argument regarding the lack of probable cause as to the warrant is unavailing.

### IV.  *Fruit of the Poisonous Tree*

Defendant Vaughan also moves to suppress the articles seized during his June 2, 1993 arrest, to wit, the .25 caliber pistol and ammunition. Under the exclusionary rule, defendant Vaughan maintains that his arrest and the further search constitute fruits of the poisonous tree and, hence, are subject to suppression. (Docket Entry # 19).

The government correctly argues, however, that the arrest was the product of an independent grand jury indictment. Citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the government submits that the resulting indictment is facially valid and evidence seized thereunder is not subject to suppression. The government also points out that seizure of the .25 caliber pistol and ammunition was fortuitous. (Docket Entry # 20).

■ The purpose of the judicially created exclusionary rule "is to deter police misconduct by eliminating the incentive for police officers to disregard constitutional requirements on the chance that they may turn up evidence which would incriminate a defen-

dant." *United States v. Aiudi*, 835 F.2d 943, 945 (1st Cir.1987), *cert. denied*, 485 U.S. 978, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *accord United States v. Williams*, 622 F.2d 830, 841 (5th Cir.1980), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981) (the exclusionary rule is "judge-made" and "justified ... only by its deterrence of future police misconduct"). The purpose of the rule, therefore, is not to redress defendant Vaughan's injury. *United States v. Turk*, 526 F.2d 654, 660 (5th Cir.1976), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976).

■ The rule bars the nonimpeachment use at trial of evidence seized during an illegal search and evidence indirectly obtained as the product of an unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). As to the latter category, the determination is not a "but for" inquiry. Courts consistently reject "contentions that the exclusionary rule's emphasis on deterrence means that 'anything which deters illegal searches is thereby commanded by the Fourth Amendment.'" *United States v. McCrory*, 930 F.2d 63, 67 (D.C.Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992).

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Wong Sun v. United States*, 371 U.S. at 487–488, 83 S.Ct. at 417.

■ In the case at bar, no deterrent purpose is served by suppressing the evidence seized during defendant Vaughan's June 2, 1993 arrest. The punctuation contained in the warrant is misleading. Captain Rowe entered the storage room with a good faith, albeit mistaken, belief that the warrant extended to areas where persons might be concealed or where controlled substances might be located regardless of the likelihood

that Earl Vaughan occupied and/or possessed the area in question. *See United States v. Williams*, 622 F.2d at 482 (deterrent effect of excluding evidence diminished when officers act in good faith).

■ More importantly, while defendant Vaughan maintains that his arrest was improperly based on illegally obtained evidence, it was the result of an arrest warrant issued by a magistrate judge acting on an indictment rendered by a grand jury. The exclusionary rule does not extend to the grand jury room. *United States v. Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974). Therefore, the government may use evidence obtained illegally, such as the sawed off shotgun, in presenting its case to the grand jury. *United States v. Haynie*, 637 F.2d 227, 238 (4th Cir.1980), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981) (citing *Calandra* and finding that display of photograph to grand jury obtained as a result of improper arrest was permissible). It was therefore permissible for the government to show the sawed off shotgun to the grand jury.

■ Thereafter, the grand jury rendered an indictment. "An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence." *United States v. Beery*, 678 F.2d 856, 859 (10th Cir.1982) (citing *Calandra*); *accord United States v. Chawla*, 482 F.Supp. 1136, 1140 (E.D.N.Y. 1980) (indictment returned by legally constituted, unbiased grand jury, valid on its face, is sufficient to call for a trial on the merits). An arrest warrant based on an indictment also establishes probable cause for issuance of the warrant. *United States v. Parsons*, 448 F.Supp. 733, 737 (W.D.Mo.), *affm'd*, 585 F.2d 941 (8th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979) (quoting *Giordenello v. United States*, 357 U.S. 480, 487, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958)). Employing this reasoning, the court in *United States v. Morales*, 851 F.Supp. 112, 117 (S.D.N.Y.1994), denied the defendant's motion to suppress evidence seized during an arrest purportedly made without probable cause. This court similarly

rejects defendant Vaughan's argument to suppress evidence seized during his arrest and the further search on the ground that the evidence seized (the sawed off shotgun) lay outside the scope of the warrant and the September 26, 1990 search thereunder.

 Moreover, the arresting officers did not exploit the illegally obtained sawed off shotgun in order to seize the .25 caliber pistol and ammunition. Rather, they seized the .25 caliber pistol under the plain view doctrine. It was only by chance that the arresting officers accompanied defendant Vaughan into his bedroom during the arrest. While in the bedroom, the arresting officers viewed the .25 caliber pistol. One of the agents knew that defendant Vaughan was a convicted felon.[7] Hence, the officers seized the .25 caliber pistol under the plain view doctrine which, consequently, attenuates the connection between the improperly seized sawed off shotgun and the seizure of the pistol and ammunition.

In sum, evidence seized during defendant Vaughan's June 2, 1993 arrest was not tainted as "fruit of the poisonous tree."

## CONCLUSION

 In accordance with the foregoing discussion, this court **RECOMMENDS**[8] that defendant Vaughan's motions to suppress (Docket Entry ## 10 & 18) be **ALLOWED** with respect to evidence seized in the basement storage room and otherwise **DENIED.**

---

7. Defendant Vaughan did not dispute these facts as set forth in the government's memorandum (Docket Entry # 20). The location of the ammunition is unclear from the papers. It should be remembered, however, that defendant Vaughan bears the burden of establishing the infringement of his Fourth Amendment rights.

8. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).